Filed 3/8/21  Williams v. Ameriprise Financial CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FLORINA WILLIAMS et al., | |
| Plaintiffs and Appellants, | G058767 |
| v. | (Super. Ct. No. 30-2018-01025655) |
| AMERIPRISE FINANCIAL, INC. et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Melissa R. McCormick, Judge.  Affirmed.

Marasigan Law Practice and Jayson Q. Marasigan for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher and H. Douglas Galt for Defendants and Respondents.

\*        \*        \*

Florina Williams and her mother, Maria Pop, appeal from the judgment entered after the trial court granted summary judgment on their claims arising from the allegedly improper nonrenewal of their automobile insurance policy by defendants Ameriprise Financial, Inc. and American Family Connect Property and Casualty Insurance Company (collectively "Ameriprise"). Williams and Pop contend that Ameriprise's nonrenewal of the policy violated the Insurance Code provisions limiting the circumstances under which an insurer can decline to renew a policy. We disagree and affirm the judgment.

In challenging the summary judgment, Williams and Pop focus largely on whether Ameriprise's nonrenewal of the policy was justified based on a determination that Pop's prior accident record—which pre-existed her addition to Williams's policy— qualified as a "substantial increase in the hazard insured against," as defined in the California Code of Regulations, title 10, section 2632.19, subdivision (b) (section 2632.19).

We believe this analysis is faulty since Ameriprise's nonrenewal of the policy was not based solely on the issue of Pop's driving record and its requirement that she be formally excluded from coverage as a condition of renewal. As the trial court pointed out in its ruling, Ameriprise also based its nonrenewal on the fact that Williams failed to provide it with title documents it had repeatedly requested which related to the three vehicles covered under the policy. The evidence was undisputed that Ameriprise formally notified Williams several months before the policy term expired that she was required to provide this title documentation and that her failure to do so could result in nonrenewal of the policy. Williams later acknowledged that requirement during a telephone call with an Ameriprise representative, who explained to her why the documents were required and warned that if she failed to submit the documentation the policy would not be renewed. Williams failed to demonstrate any triable issue of fact on the issue of whether she complied with the requirement, and her failure to do so qualified

2

as grounds for nonrenewal under Insurance Code[1] section 1861.03, subdivision (c)(1) and section 2632.19.

## FACTS

Beginning in May 2016, Pop was insured as a driver under an Ameriprise policy she shared with her husband, Emil Pop. However, on November 20, 2017, shortly after Emil died, Williams sought to add both Pop and Pop's Volkswagen automobile to her own Ameriprise policy.[2] When Pop was added to Williams's policy, only five days before its term expired on November 25, she was identified as a "driver" and her Volkswagen was added as a covered vehicle. The amended declaration page, effective as of November 20, reflected a premium of $3,060 for six months.

Two months later, in January 12, 2018, Williams learned that her November 25 policy renewal had not been processed, due to what Ameriprise acknowledged was its error. Ameriprise then issued a replacement policy, retroactively effective to November 25, which was intended to cover the same drivers and vehicles as the lapsed policy.[3]

The replacement policy did not list Pop as an insured driver and did not list her Volkswagen as an insured vehicle. The only insured "drivers" listed were Williams and her brother, Florine, and the three insured vehicles included a Jeep that Williams had

---

[1]     All further statutory references are to the Insurance Code, unless otherwise indicated.

[2]     Both Pop and her late husband, Emil, resided in Williams's household.

[3]     Williams specifically confirmed with the representative that her policy had covered "three cars" and "three drivers . . . my mother is a driver, myself and a (inaudible)." However, there was some confusion on the issue because when the representative later asked Williams if there was "anyone else who would use or operate your vehicles besides you and Florine [Williams's brother]," Williams responded "No, no, not at all."

not owned since 2016, rather than Pop's Volkswagen. The total premium charged for that policy was substantially reduced to $1,306.61 for the six month term.

Three days later, on January 15, 2018, Ameriprise sent Williams a letter requiring that she submit additional information pertaining to her insurance policy. Specifically, Ameriprise stated it had "confirmed that Maria Pop is residing in the household with an active driver's license [but h]er driving history currently does not qualify due to a December 22, 2016, at-fault accident bodily injury and a February 6, 2016, at-fault accident property damage." Consequently, Ameriprise "require[d] a signed and completed driver exclusion form for Maria for coverage to continue." Additionally, Ameriprise required "a copy of the title or registration for each vehicle listed on the policy," and explained that "[i]f any of the vehicles have a salvage or rebuilt title, we will also require an acceptable certified mechanics statement and photos of all four sides of the vehicle to confirm it is in safe operating condition with no unrepaired damages."

The letter asked Williams to provide the driver exclusion form for Pop and the title documents by February 19, 2018, and it provided a postal mailing address, an email address, and a fax number, as options for return of the required documents.

Williams failed to respond to the January letter. Instead she contacted Ameriprise on February 12, 2018, to inquire why her latest declarations page reflected coverage for a Jeep she no longer owned, rather than for Pop's Volkswagen. She asked to have the Jeep removed and Pop's Volkswagen added back onto the policy. An Ameriprise representative initially questioned whether the Volkswagen could be added because its title was held in the name of both Emil and Maria Pop. But after reviewing the records, the representative determined that in light of Williams's explanation of Emil's death, the Volkswagen could be added.

On March 22, 2018, Ameriprise sent Williams another letter, informing her that her "automobile insurance policy is scheduled to expire at 12:01 a.m. on **May 25, 2018.**" It explained "[t]his action has been initiated because of a substantial increase in

4

hazard due to a lack of underwriting information.  We have not received all of the information we requested in the letter we sent to you on January 15, 2018."

The letter reminded Williams of the information requested in the January letter and clarified that "[i]f this information is received prior to the nonrenewal date, coverage will continue."  The letter also advised Williams that she still had time to obtain coverage from a different carrier and urged her to do so "immediately."

Two weeks later, on April 5, 2018, Williams called Ameriprise to add an additional vehicle to her policy.  During that conversation, Williams mentioned that Pop "is driving the VW," after which the representative noted that Pop is listed on the policy "just as another household member," but not as a driver.  Williams then stated, "the VW was her and my dad's car.  She really doesn't drive anywhere."  She explained, "[t]he only reason I added [the Volkswagen] is because the lease is under her name.  So basically I just need the car insured because it's under her name.  But she really doesn't drive anywhere."

Later in the conversation, Williams asked the representative about the letter she had received in March, stating that Pop would have to be excluded from the policy if she had an active driver's license.  The representative confirmed that was the case, explaining that even if Pop was not driving, as long as she was living in the household and had an active driver's license, she would have to be expressly excluded from coverage as a driver, "otherwise we do need to rate her on the policy as a driver [and] the issue is going to be about the [two accidents]."[4]

Williams then asked "[s]o what do I have to do for her?"  She added that although Pop almost never drove, "if she has to drive down the street to the store, she probably will do that."  The representative replied that if Pop did not want to surrender

_____

[4]    The representative explained that Pop's inclusion on the policy as merely "another household member," suggested she was either not an active driver or was insured through a different company.

her license, then the only options were to "rate her on the policy as a driver" or "she could be excluded, but then she can't drive any vehicles." Williams stated "[n]o, I don't want her excluded."

Williams and the representative also discussed the March letter's additional requirement that Williams provide title documentation for each of the covered vehicles. The representative explained why Pop's involvement in two automobile accidents might affect her car's title, stating it raised the question of whether the vehicle had "a salvage or a rebuilt title." Thus, the representative affirmed that, as reflected in the letter, the company would also need a "certified mechanic's statement" and four photographs to establish the car's condition.

Ultimately, the representative confirmed that as stated in the January and March letters, Ameriprise was requiring documentation of the registration on all the vehicles covered by the policy, given Pop's accident history, to ensure that none of the vehicles had a salvage or rebuilt title. Williams agreed to provide that documentation, inquiring whether she could submit the documentation by email. The representative told her that she could.

Williams and the representative then returned to the issue of adding Pop back onto the policy as an insured driver. Williams again told the representative that Pop was "really not driving but I don't want her taken off."

The representative told Williams that adding Pop to the policy as an active driver "shoots your premium up major"—from $1733 to $4801 for each six month term. Williams responded, "Wow. Okay. So can I just add her on until I renew, and then I'll try to figure something out. I'll try to look around for her." The representative replied, "Yeah, we'll add her on now because we have to, and then your choice would be either . . . ." Williams asked how much it would cost to include Pop just until the end of the current policy term; the representative told her it would be $847.51. Williams

6

replied, "Yeah, let's do that, and then at the renewal, I'll try to figure something out for her. [¶] . . . [¶] Because that's quite a bit of money."

At the end of the call, the representative reminded Williams "[d]on't forget, you're going to send in the copies of those registrations, right, so we got that resolved." Williams responded, "Yeah." The representative went on, "Because if you don't, then they're not actually—they won't renew your policy come the 25th of May." Williams acknowledged that, saying "Yeah. Okay."

Ameriprise did not receive the title documents; it did not renew Williams's policy in May 2018.

On July 10, a month and a half after the policy lapsed, Williams called Ameriprise to request that one of her vehicles be dropped from the policy—seemingly unaware that her policy had been terminated. When the representative informed her that the policy had been cancelled due to her failure to return documentation excluding Pop from coverage, Williams protested she sent "that" back to Ameriprise some time ago. The representative asked, "you and Maria signed the driver exclusion form and sent it back to us?" Williams replied, "Yes." The representative later asked Williams, "do you have any confirmation that you actually sent that driver exclusion form in?" and Williams replied "No." When the representative then said that his notes "don't show that we've ever received any kind of correspondence from you since then, as far as like a driver exclusion form goes," she states "I can't believe that, because I mailed it."

In a subsequent conversation with an Ameriprise supervisor, the supervisor explained the policy's nonrenewal stemmed from Williams's failure to submit "the driver exclusion form for Maria Pop, and . . . a copy of title or registration for each vehicle." She told Williams her policy could not be reinstated and she would instead have to apply for a new policy which would not be activated until after the application was received and processed. The supervisor also informed Williams that she could only get a new policy from Ameriprise if Pop were excluded from the coverage.

7

On the same day—July 10, 2018—Pop was involved in a car accident as a driver. When Ameriprise declined coverage as to that accident, Williams and Pop filed suit against Ameriprise in October 2018, alleging causes of action for declaratory relief, breach of contract, breach of the covenant of good faith and fair dealing and unfair competition. All of the causes of action are grounded on the alleged impropriety of Ameriprise's nonrenewal of the insurance policy on May 25, 2018.

Specifically, the cause of action for declaratory relief asked the court to declare that Ameriprise's nonrenewal of the policy failed to comply with section 1861.03, subdivision (c)(1), which governs the circumstances under which an insurer may decline to renew a policy, and thus that the policy remained in effect on July 10, 2018. The causes of action for breach of contract and breach of the covenant of good faith and fair dealing relied on the contention that the policy remained in effect as the basis for a claim that Ameriprise breached its obligations when it refused to cover Pop's July 10, 2018 accident. The cause of action for unfair competition was similarly based on the assertion that Ameriprise's improper effort to terminate the policy constituted an unfair business practice under Business and Professions Code section 17200, et seq.

Ameriprise answered the first amended complaint in June 2019 and filed a motion for summary judgment three months later. Ameriprise argued that its nonrenewal of the insurance policy was justified on two separate bases: first, because Williams failed to submit the document excluding Pop from coverage; and second, because Williams failed to submit the title documentation for the covered vehicles. Ameriprise sought a declaration that "no policy was in force at the time of [Pop's] July 10, 2018, accident."

Ameriprise added that if Williams had returned the excluded driver form for Pop, as she contended she had done during her July 10 conversation with an Ameriprise representative, there would be no coverage for Pop's accident even if the policy had remained in effect.

8

Williams and Pop opposed the motion, arguing primarily that Ameriprise's nonrenewal was ineffective because (1) the timing of Pop's prior accident record excluded it from the statutory definition of a "substantial increase in the hazard insured against," which would qualify it as a basis for nonrenewal; and (2) the alleged failure to submit title documents for the covered vehicles did not justify the non-renewal decision. Williams and Pop also claimed that Williams never excluded Pop as an insured driver under the policy, nor did she ever intend to do so.[5]

The court granted the motion. The court focused on Williams's failure to provide Ameriprise with any of the documents it requested in both January and March 2018. The court noted that in addition to the excluded driver form for Pop, the underwriting information the letters required was "'a copy of the title or registration for each vehicle listed on the policy,'" and that "'[i]f any of the vehicles have a salvage or

---

[5] Ameriprise contends that Williams's colloquy with the Ameriprise representative on July 10—in which she repeatedly states she returned the exclusion form—demonstrates that Williams intended to exclude Pop from the coverage and that she believed she had done so by returning the driver exclusion form. Ameriprise thus argues that even if the policy had remained in effect after May 25, 2018, it would not have covered Pop's July 10 accident as a matter of law.

In response, Williams and Pop point to Williams's April conversation with a different representative as evidence that she never intended to exclude Pop from coverage; Williams also asserts in her declaration in opposition to the summary judgment that what she was trying to convey to the representative in July was that she believed she had resolved the issue regarding her mother's potential exclusion during the April phone call and that she never intended to exclude her mother from the coverage. They contend this evidence created a triable issue of fact.

We think Williams and Pop have the better argument because Williams's statements in the July phone conversation were not a sworn discovery response. She was therefore not precluded from contradicting them for summary judgment purposes. (See *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 [It is well-established that "a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses"].) Thus, Williams's subsequent declaration—appearing to contradict what she said in that conversation—was sufficient to create a triable issue of fact.

9

rebuilt title, we will also require an acceptable certified mechanics [*sic*] statement and photos of all four sides of the vehicles to confirm it is in safe operating condition with no unrepaired damages.'"

The court explained, "Defendants assert that by May 25, 2018, Defendants had not received the excluded driver form or the title/registration documents for Plaintiffs' vehicles and that the policy therefore expired on that date," and that Williams and Pop had failed to submit sufficient evidence to demonstrate a triable issue of fact on the point. The court concluded, "Plaintiffs' argument that the March 22, 2018 letter did not comply with California law is not persuasive," and that as a consequence, "Defendants have demonstrated that Plaintiffs cannot prove their declaratory relief and breach of contract claims and Plaintiffs have not produced evidence demonstrating the existence of a triable issue of material fact on either claim. Because Plaintiffs cannot prove their declaratory relief and breach of contract claims, Plaintiffs' implied covenant of good faith and fair dealing and unfair competition (Cal. Bus. & Prof. Code § 17200) claims also fail."

On January 2, 2020, the court entered judgment in favor of Ameriprise.

## DISCUSSION

1. *Summary Judgment Standards*

Any party to an action may move for summary judgment. (Code Civ. Proc., § 437c, subd. (a)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The object of the summary judgment procedure is "to cut through the parties' pleadings" to determine whether trial is necessary to resolve their dispute. (*Ibid*.)

"A party may move for summary adjudication as to one or more causes of action within an action, one or more affirmative defenses, one or more claims for damages, or one or more issues of duty . . . ." (Code Civ. Proc., § 437c, subd. (f)(1).) "A motion for summary adjudication may be made by itself or as an alternative to a motion

10

for summary judgment and shall proceed in all procedural respects as a motion for summary judgment." (*Id.*, subd. (f)(2).)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact." (*Aguilar*, *supra*, 25 Cal.4th at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question." (*Id*., at p. 851.) A defendant moving for summary judgment may satisfy its initial burden either by producing evidence of a complete defense or by showing the plaintiff's inability to establish a required element of the case. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 853.)

If a moving defendant makes the necessary initial showing, the burden of production shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); see *Aguilar*, *supra*, 25 Cal.4th at p. 850.) If the plaintiff opposing summary judgment presents evidence demonstrating the existence of a disputed material fact, the motion must be denied. (*Id*., at p. 856.)

In evaluating the summary judgment motion and opposition, the trial court "must consider all of the evidence and all of the inferences drawn therefrom." (*Aguilar*, *supra*, 25 Cal.4th at p. 856.) The moving party's evidence is strictly construed, while the opponent's is liberally construed. (*Id*. at p. 843.)

On appeal, we review the summary judgment de novo. (*Aguilar*, *supra*, 25 Cal.4th at p. 860.) We consider all of the evidence submitted by the moving and opposing parties, except that to which objections were made and sustained. (*Ibid*.) "In undertaking our independent review of the evidence submitted, we apply the same three-step analysis as the trial court." (*Bono v. Clark* (2002) 103 Cal.App.4th 1409, 1431.) "First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving

11

party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Id*. at p. 1432.)

2.      *Statutory Requirements for Nonrenewal of a Policy*

The central issue in this case is whether Ameriprise's nonrenewal of Williams's policy complied with statues limiting the circumstances under which an insurer can refuse to renew an existing automobile policy. Specifically, section 1861.03, subdivision (c)(1), provides: "Notwithstanding any other provision of law, a notice of cancellation or nonrenewal of a policy for automobile insurance shall be effective only if it is based on one or more of the following reasons: (A) nonpayment of premium; (B) fraud or material misrepresentation affecting the policy or insured; (C) a substantial increase in the hazard insured against."

Section 2632.19, subdivision (a), in turn, defines the circumstances which qualify as "a substantial increase in the hazard insured against" for purposes of justifying the cancellation or nonrenewal of a policy. As pertinent here, that section states that "[f]or the purpose of cancellation or nonrenewal pursuant to *Insurance Code Section 1861.03(c)*, the following events or characteristics shall constitute a substantial increase in the hazard insured against: [¶] (1) the refusal or failure by the insured to provide to the insurer, within 30 days after reasonable written request to the insured, information necessary to accurately underwrite or classify the risk. Every written request for information to an insured shall contain a prominent notice, in both English and Spanish, advising the insured that his or her failure to provide the requested information within the time required may result in the cancellation or nonrenewal of his or her policy." (§ 2632.19, subd. (b)(1).)

Another "substantial increase" is established by "the failure of the insured vehicle to comply with California or federal safety requirements if such failure is not removed prior to the time that the insurer's nonrenewal or cancellation of the policy becomes effective." (§ 2632.19, subd. (b)(3).)

12

A third "substantial increase" justifying nonrenewal is "the insured or principal or occasional driver of the insured vehicle has been assessed a total of three or more violation points under Section 2632.13.1 within the preceding 36 months. . . . and [¶] at the time of the expiration of the insured's current policy, the insured is not eligible under the insurer's then-current underwriting rules to purchase a policy of private passenger automobile insurance from the insurer." (§ 2632.19, subd. (c)(1)(A) & (B).)

However, as to the third "substantial increase," section 2632.19, subdivision (e), also states that "[n]otwithstanding any other provision of this Section [and with some exceptions], an insurer may not consider there to be a substantial increase in the hazard insured against unless part of the circumstances which constitute the substantial increase in the hazard insured against occurred after the most recent issuance or renewal of the policy."

3.    *The Summary Judgment in Favor of Ameriprise*

In its January 2018 letter, Ameriprise required Williams to perform two acts:  (1) submit a form excluding Pop from coverage as a driver under the policy; and (2) provide title documents for all covered vehicles.  Ameriprise warned Williams that her failure to do those two things by the stated deadline could result in the cancellation or nonrenewal of her policy.  Ameriprise sent a second letter in March 2018, informing Williams that her policy would terminate on May 25, 2018 "because of a substantial increase in hazard due to a lack of underwriting information."  It specifically identified Williams's failure to provide a form excluding Pop from coverage and her failure to submit the title information for the covered vehicles, as required by the January letter. The letter indicated that if she provided the required materials prior to the nonrenewal date, her coverage would continue, while also urging her to obtain coverage from another company.

Thus, in order to prevail on this appeal, Williams and Pop have to establish, with respect to each of the two requirements imposed by Ameriprise, either that there is a

13

triable issue of fact about whether Williams complied with the requirement, or that the requirement did not qualify as a basis for nonrenewal under the Insurance Code.

Although Williams and Pop focus much of their argument on the issue of whether Pop's past driving record qualified as "a substantial increase in hazard" that would justify a nonrenewal in May 2018, we turn first to the issue raised by Williams's failure to provide the title documents. As we already noted, section 2632.19, subdivision (b)(1), states that "the refusal or failure by the insured to provide to the insurer, within 30 days after reasonable written request to the insured, information necessary to accurately underwrite or classify the risk" qualifies as "a substantial increase in the hazard insured against" for purposes of cancellation or nonrenewal. Thus, Williams's failure to submit the title documentation, standing alone, could constitute grounds for nonrenewal.

In the face of this reality, Williams and Pop asserted in their briefing and at oral argument that the title information was not necessary to accurately underwrite the policy risk, and thus that Ameriprise's request for that information was not reasonable. (See *Mills v. AAA Northern California, Nevada & Utah Ins. Exchange* (2016) 3 Cal.App.5th 528, 535 ["to be a 'reasonable' written request for information necessary to underwrite or classify the risk accurately, the request must be rational, appropriate for the circumstance, and necessary to the insurer's ability to evaluate the risk of offering the policy. The request cannot be arbitrary or unrelated to the insurer's need to reevaluate the risk it incurs."].) We disagree.

As Williams and Pop acknowledge, Ameriprise justified its request for the title documentation on two grounds: first, because its own titling guidelines require that a vehicle be titled to the named insured; and, second, if a vehicle is co-titled to any other

14

person, the other person on title must be either listed on the Ameriprise policy as an active driver, be insured by another company, or be excluded from coverage.[6]

In the case of Pop's Volkswagen, the record reflects that it had been co-owned by her and her late husband, Emil; Williams acknowledged that fact in her conversations with Ameriprise representatives. And while it appears that Williams represented orally to an Ameriprise representative that Emil had died, there is no evidence that she ever provided Ameriprise with documentation establishing either the fact of Emil's death or his having been removed from the Volkswagen's title. Consequently, Williams and Pop failed to raise a triable issue of fact on the question of whether Ameriprise acted reasonably when it requested the title documentation for the Volkswagen for purposes of establishing whether its coverage complied with Ameriprise's titling guidelines.

Ameriprise's second justification for the required title documentation was that, in light of Pop's prior negative driving record and her residence in Williams's household, it wanted to confirm none of the insured vehicles were so significantly damaged they had a salvage title. Ameriprise explained if any of the vehicles had a salvage title, it would require certification from a mechanic, as well as photographs of the vehicle, "to confirm it is in safe operating condition with no unrepaired damages." This requirement was consistent with section 2632.19, subdivision (b)(3), which identifies "the failure of the insured vehicle to comply with California or federal safety requirements" as a justification for cancellation or nonrenewal. The requested information was reasonably necessary for underwriting purposes.

---

[6] Williams and Pop alternatively argue that Ameriprise's only interest in how title is held would be to ascertain that the insured have an "insurable interest" in the vehicle. But Ameriprise is entitled to consider other appropriate factors in underwriting the risk—including whether any third parties also have an interest in the insured vehicle and might drive it regularly—and to establish internal guidelines for addressing those factors.

Williams and Pop nonetheless claim there are triable issues of fact as to whether the information was "necessary to accurately underwrite or classify the risk" (§ 2632.19, subd. (b)(1)) because Ameriprise had been the insurer for Pop's Volkswagen at the time of her second accident in December 2016, and it had covered the repairs of the vehicle following that accident. Thus, according to Williams and Pop, a trier of fact could infer that Ameriprise already knew the condition of the Volkswagen following Pop's two accidents, or it could have ascertained that information from its own records. Consequently, they argue Ameriprise did not actually need the title documentation from Williams to establish the condition of the Volkswagen for underwriting purposes.

Again, we disagree. Ameriprise's request was not confined to the title status of the Volkswagen, nor was Ameriprise required to assume there could not have been any change in the condition of the Volkswagen—or of any of the other covered vehicles—in the period since Pop's December 2016 accident. Williams and Pop cite no authority suggesting Ameriprise was not permitted to seek an update on the current condition of the various vehicles before committing to a renewal of the policy. And we are aware of none. Consequently, Williams and Pop have failed to raise a triable issue of fact about whether Ameriprise's request for the title documents for each of the covered vehicles was reasonable.

Finally, Williams and Pop also contend there is a triable issue of fact on the issue of whether Williams complied with Ameriprise's request for the title documents because "Williams . . . averred that she submitted the title documents as requested." They further contend the insured cannot be held responsible under the statute for "ensur[ing] . . . receipt of the information requested" if it was sent in.

We need not address the latter issue because we agree with the trial court's conclusion the evidence Williams and Pop rely upon to establish that the documents were submitted is insufficient to raise a triable issue of fact. As her counsel acknowledged during oral argument, in her declaration filed in opposition to the summary judgment

16

motion, Williams states, "I thought that I had submitted the titles to the vehicles after the April 5, 2018 phone call. However, I do not have any proof of having mailed them in."

Williams did not declare she had a present belief she submitted the title documents to Ameriprise, let alone that she actually recalled doing so. Instead, Williams's sworn statement, "I thought that I had," reflects a concession that she herself was uncertain she had submitted the title documents at the time she signed the declaration. Williams followed that concession with an admission that she had no evidence demonstrating she mailed the documents to Ameriprise. No triable issue of fact was created. (See, *Aguilar*, *supra*, 25 Cal.3d. 826, 850 ["There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof"].)

Because Williams failed to provide Ameriprise with the required title documentation for the covered vehicles after she was warned that her failure to do so could result in the nonrenewal of her policy, Ameriprise's nonrenewal was justified under sections 1861.03, subdivision (c) and 2632.19, subdivision (b)(1). We consequently need not separately consider whether the policy's nonrenewal was also justified based on Williams's failure to submit the form excluding Pop as a driver under the policy.

We acknowledge the record is complicated by the repeated mistakes made by Ameriprise in the handling of Williams's policy. However, those mistakes do not ultimately affect our analysis. Ameriprise's nonrenewal of Williams's policy in May 2018, based on her failure to provide the title documents for the covered vehicles, was in compliance with statutory requirements. We find no error in the trial court's determination the policy was no longer in effect on July 10, 2018, when Pop was involved in another accident. It consequently follows that Ameriprise did not breach any agreement with either Williams or Pop, or engage in unfair competition, based on either its nonrenewal of the policy or its refusal to cover Pop's accident.

17

## DISPOSITION

The judgment is affirmed.  Ameriprise is entitled to its costs on appeal.


GOETHALS, J.


WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.